**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HOOTERS OF TROY, INC.,

       Plaintiff               Case No.06-CV-14945
                                  Hon. Julian A. Cook
v.                               Hon. Mag. R. Steven Whalen

CITY OF TROY,

        Defendant.
_____/

| | |
|---|---|
| EDWARD G. LENNON, PLLC | Lori Grigg Bluhm (P46908) |
| Edward G. Lennon (P42278) | Christopher Forsyth (P63025) |
| Attorney for Plaintiff | Attorneys for Defendant |
| 322 N. Old Woodward Ave. | 500 W. Big Beaver Rd |
| Birmingham, MI  48009 | Troy, MI 48084 |
| (248) 723-1276 | (248) 524-3320 |

HYMAN LIPPITT, P.C.
Stephen T. McKenney (P65673)
Co-Counsel for Petitioner-Appellant
322 N. Old Woodward Ave.
Birmingham, MI 48009
(248) 646-8292

_____/

**PLAINTIFF HOOTERS OF TROY, INC.'S RESPONSE TO DEFENDANT CITY OF
TROY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK
OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................................ iii

STATEMENT OF THE ISSUES PRESENTED ...................................................................... viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...................................................... vix

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

      A.   The Plaintiff ......................................................................................................... 1

      B.   Hooters Seeks to Change Locations Within the City of Troy .............................. 2

      C.   Hooters Seeks Approval For The Transfer Of The Wagon Wheel Liquor License ................................................................................................................. 3

      D.   The State Court Case .......................................................................................... 4

      E.   This Complaint .................................................................................................... 5

III.  STANDARD OF REVIEW .............................................................................................. 5

IV.  ARGUMENT ................................................................................................................. 6

      A.   Given That The Relief Sought In The State Court Complaint Was Fundamentally Unique And Precluded Consideration Of Other Causes Of Action, *Res Judicata* Does Not Apply And This Court Is Not Deprived Of Subject Matter Jurisdiction ............................................................ 6

      B.   Younger Abstention Does Not Apply To The Facts Of This Case Because (1) This Case Does Not Involve An Important State Interest; And (2) The Bad Faith – Harassment Exception Applies To Counsel Against Abstention ................................................................................................. 9

      C.   Hooters' Complaint States A Claim For Relief .................................................. 16

V.  CONCLUSION .............................................................................................................. 20

## INDEX OF AUTHORITIES

### Cases

Adair v. State
470 Mich. 105; 680 N.W.2d 386 (2001) .................................................................... vi, 6, 8

Alleghany Corp. v. Haase
896 F.2d 1046, 1050 (7th Cir. 1990) ............................................................................10

Cameron v. Johnson
390 U.S. 611, 621 (1967) .............................................................................................12

Carroll v City of Mt. Clemens
139 F.3d 1072, 1074 (6th Cir. 1998) .........................................................................9, 12

Colorado River Water Conserv. Dist. v. United States
424 U.S. 800, 813 (1976) ...............................................................................................9

Conley v. Gibson
355 U.S. 41, 45-46 (1957) .........................................................................................6, 17

Curto v. City of Harper
954 F.2d 1237, 1243 (6th Cir. 1992) .............................................................................18

Daniels v. Williams
474 U.S. 327, 331 (1986) ..............................................................................................18

In re Delorean Motor Co. v. Weitzman
991 F.2d 1236, 1240 (6th Cir. 1993) .............................................................................17

Dillon v. Alleghany Corp.
499 U.S. 933 (1991) ......................................................................................................10

DLX, Inc. v. Kentucky
381 F.3d 511, 516 (6th Cir. 2004) ...................................................................................6

Esmail v. Macrane
862 F. Supp 217 (N.D. Ill. 1994) ........................................................................ 12, 13, 15

Gilbert v. Ferry
401 F.3d 411, 419 (6th Cir. 2005) ...............................................................................6, 15

Heyliger v. State Univ. & Community College Sys. of Tenn.
126 F.3d 849, 851-52 (6th Cir. 1997) ..............................................................................6

Hughes v. Cristofane
486 F. Supp. 541, 547 (D. Md. 1980) ...............................................................11

Jefferson County, Ala. v. Acker
527 U.S. 423, 435 n. 5, (1999)........................................................................15

Judice v. Vail
430 U.S. 327, 336 (1977) ...................................................................... 10, 11, 12

Kendall-Jackson Winery, Ltd. v. Branson
82 F. Supp.2d 844, 856 (N.D. Ill. 2000)......................................................... 11, 12

Mayer v. Mylod
988 F.2d 635, 638 (6th Cir. 1993) ...................................................................17

New Orleans Pub. Serv., Inc. (NOPSI) v. Council of City of New Orleans
491 U.S. 350, 367-68 (1989) ...................................................................... 10, 11

Nichols v. Muskingum College
318 F.3d 674, 677 (6th Cir. 2003) .....................................................................6

Pearson v. City of Grand Blanc
961 F.2d 1211, 1217 (6th Cir. 1992).................................................................18

Penzoil Co. v. Texaco, Inc.
481 U.S. 1, 14, n. 12 (1987)..............................................................................10

Perry Educ. Ass'n v. Perry Local Educators' Ass'n
460 U.S. 37, 44 (1983) ....................................................................................16

Quackenbush v. Allstate Ins. Co.,
517 U.S. 706, 719 .....................................................................................15, 16

Sambo's Restaurants, Inc. v. City of Ann Arbor
663 F.2d 686 (6th Cir. 1981)....................................................................vi, 16, 17

Scheuer v. Rhodes
416 U.S. 232, 236 (1974)...................................................................................6

Shamie v. City of Pontiac
493 Supp. 679, 683 (E.D. Mich. 1977) ..............................................................19

Virginia State Bd. of Pharmacy v. Virginia Citizens Commercial Council
425 U.S. 748 (1976) ........................................................................................ 16, 17

Warmus v. Melahn,
110 F.3d 566, 567 (8th Cir. 1997) ................................................................. 15

Wojick v City of Romulus
257 F.3d 600 (6th Cir. 2000) .................................................... vi, 18, 19, 20

Yamaha Motor Corp., U.S.A. v. Stroud
179 F.3d 598, 603 (8th Cir. 1999) ............................................................... 16

Younger v. Harris
401 U.S. 37 (1971) ................................................ vi, 5, 6, 9, 10, 11, 12, 13, 15

Zinermon v. Burch
494 U.S. 113, 125 (1990) ............................................................................. 18

**Michigan Court Rules**

Mich. Ct. R. 2.108(A)(1) ..............................................................................8

Mich. Ct. R. 2.203(A) and (B) ..................................................................8, 9

Mich. Ct. R. 2.113(D)(1) ..............................................................................7

Mich. Ct. R. 3.302 ........................................................................................8

Mich. Ct. R. 3.302(A) ..................................................................................8

Mich. Ct. R. 3.302(E) ..................................................................................7

Mich. Ct. R. 3.302(E)(1) ..............................................................................4

Mich. Ct. R. 3.302(E)(2) ..............................................................................8

Mich. Ct. R. 3.302(E) ..................................................................................8

**Federal Rules**

Fed R. Civ. P. 7(a) .......................................................................................9

Fed. R. Civ. P. 9(b) .....................................................................................17

Fed. R. Civ. P. 12(b) ....................................................................................6

Fed. R. Civ. P. 12(b)(1) ..................................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................................6

Fed. R. Civ. P. 56 ...........................................................................................6

## Federal Statutes

28 U.S.C. § 1738 .............................................................................................6

42 U.S.C. § 1983 ("Section 1983") .................................................................5

## Federal Constitutional Provisions

U.S. Const. amend. I ......................................................................................16

U.S. Const. amend. XIV .................................................................................18

00052279

### STATEMENT OF THE ISSUES PRESENTED

I.    WHETHER THIS COURT CAN APPLY *RES JUDICATA* AS A BAR TO THIS ACTION WHERE THE PENDING STATE COURT PROCEEDING:

        (A)    DID NOT INVOLVE THE SAME PARTIES AS THIS ACTION; AND

        (B)    WAS OF A FUNDAMENTALLY DIFFERENT NATURE, WHICH PURSUANT TO MICHIGAN'S COURT RULES COULD NOT HAVE BEEN JOINED WITH ANOTHER CLAIM SEEKING VINDICATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS?

    ➢ Plaintiff Answers: No
    ➢ Defendant answers: Yes

II.    WHETHER THIS COURT SHOULD DISMISS THIS CASE UNDER THE <u>YOUNGER</u> ABSTENTION DOCTRINE WHERE:

        (A)    THE STATE PROCEEDING AT ISSUE DOES NOT INVOLVE THE TYPE OF STATE INTEREST (I.E. ENFORCEMENT OF STATE JUDICIAL INDEPENDENCE) PROTECTED BY <u>YOUNGER</u>;

        (B)    PLAINTIFF DID NOT HAVE AN OPPORTUNITY TO RAISE AND LITIGATE ITS FEDERAL CONSTITUTIONAL CLAIMS IN THE STATE COURT BECAUSE OF THE NARROW RELIEF IT SOUGHT IN STATE COURT;

        (C)    THE DEFENDANT'S ACTIONS ARE INDELIBLY COLORED WITH BAD FAITH, VINDICTIVENESS AND HARASSMENT; AND

        (D)    THE ONLY REMEDY AVAILABLE, EVEN IF ABSTENTION APPLIES, IS A STAY OF THIS CASE, NOT DISMISSAL.

    ➢ Plaintiff answers: No.
    ➢ Defendant Answers: Yes.

III.    WHETHER THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, WHERE:

        (A)    DEFENDANT VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE SPEECH WHEN IT REFUSED TO GRANT PLAINTIFF A LIQUOR LICENSE TRANSFER BECAUSE DEFENDANT DID NOT APPROVE OF THE IMAGE ALLEGEDLY ASSOCIATED WITH PLAINTIFF'S TRADE NAME;

        (B)    THE COMPLAINT PLAINLY STATES THAT DEFENDANT'S DECISION TO DENY PLAINTIFF'S APPLICATION FOR A LIQUOR LICENSE TRANSFER WAS BASED SOLELY ON THE IMAGE ALLEGEDLY ASSOCIATED WITH PLAINTIFF'S TRADE

NAME AND SUPPORTS THE LEGAL THEORY THAT DEFENDANT INTENTIONALLY TREATED PLAINTIFF DIFFERENTLY THAN OTHER SIMILARLY SITUATED APPLICANTS; AND

(C)     DEFENDANT VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS - APPLICABLE BECAUSE PLAINTIFF IS THE OWNER OF A VALID LIQUOR LICENSE AND CONSEQUENTLY HAS A PROPERTY INTEREST PROTECTED BY THE FOURTEENTH AMENDMENT - WHEN DEFENDANT ARBITRARILY AND IRRATIONALLY DENIED PLAINTIFF'S LIQUOR LICENSE TRANSFER BECAUSE IT DID NOT APPROVE OF THE IMAGE ALLEGEDLY ASSOCIATED WITH PLAINTIFF'S TRADE NAME?

➢ Plaintiff answers: No
➢ Defendant answers: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

On the first issue, the controlling authority on Michigan's law applying *res judicata* is <u>Adair v. State</u>, 470 Mich. 105; 680 N.W.2d 386 (2001).

On the second issue, the controlling law on the application of <u>Younger</u> abstention is <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

On the third issue, the controlling law on Plaintiff's First Amendment claim is <u>Sambo's Restaurants, Inc. v. City of Ann Arbor</u>, 663 F.2d 686 (6th Cir. 1981). The controlling law on the issue of whether Plaintiff's complaint is plead sufficiently is Federal Rule of Civil Procedure 9(b). The controlling law on the issue of whether Plaintiff has a property interest in a liquor license sufficient to implicate the Fourteenth Amendment is <u>Wojick v City of Romulus</u>, 257 F.3d 600 (6th Cir. 2000).

**INTRODUCTION**

Plaintiff Hooters of Troy, Inc. ("Hooters") operates a restaurant in the City of Troy ("Troy").  Hooters' restaurant has maintained, for almost one decade, a class C liquor license.  In early-2006, after having decided to relocate its business within Troy, Hooters entered into separate contracts for the lease of a new location of its restaurant and for transfer of a class C liquor license for the restaurant.  Following statutory protocol, Hooters applied to Troy for a recommendation to the Michigan Liquor Control Commission that Hooters receive the license transfer.  Citing concern with the "image" of the restaurant, Troy denied Hooters' request for the transfer recommendation.

Hooters brings this action seeking redress for the violation of its constitutional rights – specifically its rights to freedom of expression; due process; and equal protection under the law – by Troy.  While Hooters did file a unique action under the Michigan Court Rules seeking superintending control over the Troy council, Troy was not, nor could it have been, a party to that action.  Given that the claim stated in this Complaint neither was, nor could have been resolved in the previously state court case, Troy's claim that this action is barred by *res judicata* is without merit.  Likewise, because this claim centers on Troy's denials of Hooters' constitutional rights, and not the propriety of the liquor license transfer request itself, Troy's request for abstention is similarly without merit.  Finally, given that Troy's rationale for denying the liquor license hinged on its explicit disapproval of the "image" that Hooters' trade name apparently conjures, Troy has engaged in prohibited viewpoint censorship in violation of the First and Fourteenth Amendments.

**STATEMENT OF FACTS**

**A.      The Plaintiff**

Hooters is a wholly-owned subsidiary corporation of Hooters of America, Inc. Hooters of America, Inc. is based in Atlanta, Georgia and operates, directly or through

00052279

franchisees, restaurants located in 46 states and several foreign countries.   Hooters restaurants are widely recognized for (1) their menu, highlighted by chicken wings, and (2) the casual beach – theme apparel worn by their female servers.

> **B.**     **Hooters Seeks to Change Locations Within the City of Troy**

Hooters has operated a restaurant in Troy continuously since December 1996. Since that time, Hooters has operated a facility located at 1686 John R. Rd., Troy, MI (the "John R Restaurant").   The John R Restaurant faces a commercial thoroughfare, but the rear of the John R Restaurant abuts a residential neighborhood.   Hooters has maintained a Class C liquor license for the John R Restaurant from December 1996 through the present.

In 2005, Hooters entered negotiations to move its operations from the John R Restaurant to 2950 Rochester Rd., Troy MI (the "Rochester Road Restaurant").   The Rochester Road Restaurant is situated at the intersection of Rochester Road and Big Beaver Road and is surrounded entirely by commercial or industrial use properties.

Hooters intends to operate the Rochester Road Restaurant and to lease the premises from Sign of the Beefcarver, Inc.  The Rochester Road Restaurant is currently vacant and has been since the Wagon Wheel restaurant[1] shuddered its doors.   On December 31, 2005, Wagon Wheel and Hooters entered into a lease for the Rochester Road Restaurant.   On January 6, 2006, Wagon Wheel and Hooters entered into an agreement for Wagon Wheel to transfer its Class C liquor license for the Rochester Road Restaurant to Hooters.

> **C.**     **Hooters Seeks Approval For The Transfer Of The Wagon Wheel Liquor License.**

---

[1]     Sign of the Beefcarver, Inc. operated a restaurant with the Class C liquor license at issue on the premises of the Rochester Road Restaurant under the name Wagon Wheel.  Collectively, this brief refers to Sign of the Beefcarver, Inc. and Wagon Wheel as "Wagon Wheel."

On January 17, 2006, Hooters filled an application with the Michigan Liquor Control Commission (the "MLCC") for transfer of the Class C liquor license from Wagon Wheel to itself.[2]   On March 14, 2006 the MLCC responded by opening a mandatory investigation into the request.  This investigation included an investigation by the local law enforcement agency (i.e., the "Troy Police Department") and the local legislative body (i.e., the "Troy City Council").

As part of its investigation and report, the Troy Police Department reported that over the ten years that Hooters operated the John R Restaurant, it received only three citations for violations of the liquor code: (1) a 1997 violation for conducting a beer promotion for a prize amount in excess of $50; (2) a 2001 violation for serving an intoxicated patron; and (3) a 2003 violation for serving a minor decoy used by the MLCC. In addition, the Troy Police Department compared calls it made to Hooters with calls it made to other restaurants and bars.  This comparison revealed that calls to Hooters were exceptional only for the number of reports of larceny from vehicles; a distinction "which is not a reflection of the business."  Notably, none of the police calls to Hooters complained of "lewd or lavacious behavior."  Given the facts uncovered during its investigation, the Troy Police Department did not object to approval of Hooters' request to transfer the license.  The issue of approving the license was presented to the Troy liquor advisory committee, which approved recommending the transfer by a unanimous vote.  See, generally, (Dft.'s Ex. 2).

The Troy City Council considered Hooters' request to transfer the license at its June 19, 2006 meeting.  Councilwoman Robin Beltramini moved, seconded by Mayor Louise Schilling, that the Troy City Council recommend approval of the license transfer. (Ex. A; Synopsis of 06/19/06 Troy City Council Meeting).  During discussion of the issue,

---

[2]      When the transfer is granted, Hooters intends to place its current liquor license for the John R Restaurant into escrow or to sell the license.

some council members expressed concern over whether a business with the name "Hooters" was appropriate to place at the so-called "gateway to the City." (Ex. A; at pp. 4-6). Indeed, council members specifically limited their reasoning for voting against the request to concerns over Hooters' "impression" and "image." (*Id.* at pp. 4, 6). None of the council members stated that they were voting against the recommendation because of concerns over previous liquor violations or concerns over crime or public safety. (*Id.*). By a four-to-three vote, the Troy City Council denied the motion to recommend the liquor license transfer. (*Id.* at pp. 6-7).

  **D.**  **The State Court Case**

On June 27, 2006, Hooters filed a complaint in the Oakland County Circuit Court (the "State Court") seeking a writ of superintending control (the "State Court Complaint"). Consistent with the strict confines and narrow scope of Michigan Court Rule 3.302(E)(1), Hooters' State Court Complaint, styled In re Hooters of Troy, Inc., named no defendant. Indeed, the only relief sought in the State Court Complaint was the issuance of a writ of superintending control from the State Court directing the Troy City Council to recommend transfer of the liquor license from Wagon Wheel to Hooters. Twenty-one days after filing the State Court Complaint, Hooters filed a motion asking the State Court to issue an order of superintending control.

The focus of the State Court Complaint and the motion for issuance of the writ of superintending control was Hooters' assertion that the Troy City Council could refuse to recommend transfer of a liquor license only for reasons objectively related to Troy's interests in public safety. In the State Court, Hooters argued that because the Troy City Council ignored the criteria prescribed by Michigan law for approving or denying the transfer of a liquor license, and because Hooters met those prescribed criteria, the State Court was compelled to issue a writ requiring the Troy City Council to recommend the transfer

Although it was not required to do so, Troy filed an answer to Hooters' motion in the State Court.  Following the argument on the motion for writ of superintending control, the State Court issued an order denying the motion for the writ.  The State Court claimed that the Troy City Council was unbounded by any criteria in determining whether to recommend a transfer of a liquor license and that it would not therefore, compel any action by the Troy City Council.  Hooters has appealed the trial court's determination, and that case is still pending on appeal before the Michigan Court of Appeals.

### E.    __This Complaint__

On November 1, 2006, the day after it received the occupancy permit for the Rochester Road Restaurant, Hooters filed this Complaint (the "Federal Court Complaint") seeking damages for Troy's violation of its constitutional rights under 42 U.S.C. § 1983 ("Section 1983").  The crux of the Federal Court Complaint is that Troy's actions violated Hooters' rights to free expression, due process and equal protection.  Importantly, in the Federal Court Complaint, Hooters does not seek equitable redress; it does not seek an appeal of or interference with the State Court decision; it seeks only monetary damages.

### III.  STANDARD OF REVIEW

Although some confusion exists in its arguments, Troy styles this motion as a motion to dismiss for (1) lack of subject matter jurisdiction; and (2) failure to state a claim for which relief may be granted.  In its brief, Troy advances three arguments in support of its motion: (1) that the Federal Court Complaint is barred by *res judicata*; (2) that the Court should dismiss the Federal Court Complaint consistent with the Younger abstention doctrine; and, alternatively, (3) that this Court should dismiss the Federal Court Complaint for failure to state a claim for which relief may be granted.

Troy's first two arguments fall under Rule 12(b)(1), which provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P.

12(b)(1); see also DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004) (applying Rule 12(b)(1) to a motion to dismiss based on an assertion of res judicata); Gilbert v. Ferry, 401 F.3d 411, 419 (6th Cir. 2005) (applying Rule 12(b)(1) to a motion to dismiss based on Younger abstention).  In considering a motion to dismiss under Rule 12(b)(1), "the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." Nichols v. Muskingum College, 318 F.3d 674, 677 (6th Cir. 2003).

Troy's final claim falls within the confines of Rule 12(b)(6).  This Court, in evaluating a motion under Rule 12(b)(6), must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true and determine whether the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Additionally, the court may not consider matters outside the pleadings in support of such a motion, unless the Court gives the parties notice and converts the motion into one for summary disposition under Rule 56.  Fed. R. Civ. P. 12(b).

## IV.  ARGUMENT

**A.    Given That The Relief Sought In The State Court Complaint Was Fundamentally Unique And Precluded Consideration Of Other Causes Of Action, _Res Judicata_ Does Not Apply And This Court Is Not Deprived Of Subject Matter Jurisdiction.**

When a party raises the defense of res judicata in a federal court action, predicated upon previous state court adjudication, the federal court applies the state court's substantive res judicata law.  28 U.S.C. § 1738 (Full Faith and Credit Act); see also Heyliger v. State Univ. & Community College Sys. of Tenn., 126 F.3d 849, 851-52 (6th Cir. 1997).  In this case, because the State Court Complaint was filed in Michigan, Michigan law governs the res judicata inquiry.  In Michigan, the doctrine of res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits,

(2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."  Adair v. State, 470 Mich. 105, 121; 680 N.W.2d 386 (2001).

Hooters concedes that the first element – a final decision on the merits in the previous case – is present.  However, Troy cannot satisfy the remaining two elements necessary for the application of *res judicata* in this case.  The absence of these two elements may be addressed together, because, contrary to its glib representations to this Court, Troy was not a party to the State Court Complaint because the Michigan Court Rules specifically provided that it could not be a party to the State Court Complaint.

Hooters filed the State Court Complaint consistent with Michigan Court Rule 3.302.  That rule provides that.

> A person seeking superintending control in the circuit court must file a complaint with the court.  *Only the plaintiff's name may appear in the title of the action* (for example In re Smith).  The plaintiff must serve a copy of the complaint on the court or tribunal over which superintending control is sought. . .
>
> Anyone served under subrule (E)(1) **may** file an answer within 21 days after the complaint is served. . . .
>
> After the filing of the complaint and answer, or if no answer  is filed, after the expiration of time for filing an answer, the court may . . . issue the order requested, or . . . dismiss the complaint. . . .

Mich. Ct. R. 3.302(E) (emphasis added).  Michigan Court Rule 2.113(D)(1) provides that, in a complaint, the title of the action "must include the names of all the parties. . . ."  Mich. Ct. R. 2.113(D)(1).  Thus, any person not named in the title is not deemed a party under Michigan law.  Accordingly, Troy was never a party to the suit, a fundamental undisputed fact wholly overlooked by Troy in its motion and brief.  (Dft.'s Ex. 1).

Further illustrating the profound fundamental difference between the complaint for writ of superintending control and a traditional complaint, is the fact that Troy was

7

never required to answer or otherwise appear in the case.  <u>Compare</u> Mich. Ct. R. 3.302(E)(2) ("Anyone served . . . **may** file and answer") <u>with</u> Mich. Ct. R. 2.108(A)(1) ("A defendant **must** file and serve an answer. . . .")  (Emphasis added).  Indeed, as opposed to a traditional adversarial action, in which the parties must provide opposing pleadings or face the sanction of default, in this fundamentally unique superintending control action, the State Court is free to decide whether to issue the writ in the absence of any response from the "lower tribunal."  Mich. Ct. R. 3.302(E).

Tellingly, a superintending control action is not one to which Michigan's joinder rule applies.  In fact, Michigan's joinder rule applies only "[i]n a pleading that states a claim **against an opposing party**. . ."  Mich. Ct. R. 2.203(A) and (B) (emphasis added).  In the superintending control action, however, there is no "opposing party."  Mich. Ct. R. 3.302.  Given that there is no "opposing party," the Michigan Court Rules do not provide a mechanism for joining claims to the superintending control complaint.  Consequently, Hooters' constitutional claims were not ones that "[are], or could have been resolved" in the State Court.  <u>Contra. Adair, supra.</u>

The procedural peculiarity of the superintending control action is consistent with the substantive purpose of the court rule.  Indeed, unlike a traditional complaint, in which a plaintiff seeks redress for a wrong committed by a defendant, the action for a writ of superintending control requests that a higher court order a "lower tribunal (i.e. the Troy City Council) to perform its duty under the law.  Mich. Ct. R. 3.302(A).  Thus, unlike the traditional complaint, which requires the presence of adverse parties, the petition for superintending control needs only the presence of the plaintiff.  Mich. Ct. R. 3.302(E).

Given that Troy was not a party to the original State Court Complaint, Michigan's *res judicata* requirement for the presence of the same parties or their privies cannot be met.  This action involves a new party, Troy, who, unlike the first case, is required by court rule to appear and respond.  <u>See</u>, <u>e.g.</u>, Fed R. Civ. P. 7(a).  Likewise, because the

State Court Complaint could not, consistent with Michigan's joinder rules, have included any other claims.  Troy could not have resolved its claims in the State Court.  Mich. Ct. R. 2.203(A) and (B).  Consequently, Troy cannot satisfy either the "same parties" or the "was or could have been resolved" elements.  Therefore, this Court must deny Troy's motion to dismiss on grounds of *res judicata.*

> **B.** **Younger Abstention Does Not Apply To The Facts Of This Case Because (1) This Case Does Not Involve An Important State Interest; And (2) The Bad Faith – Harassment Exception Applies To Counsel Against Abstention.**

Generally, once a plaintiff properly invokes federal jurisdiction, the court should retain jurisdiction and decide the matter at hand.  Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 813 (1976) ("federal abstention is the exception, rather than the rule, of the exercise of federal jurisdiction.").  However, the Supreme Court has recognized that, in the interests of comity, federal courts should, under certain specific circumstances, abstain from deciding matters pending in state courts.  See, e.g., Younger v. Harris, 401 U.S. 37 (1971).  Younger abstention is applicable where a parallel state proceeding: "(1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims."  Carroll v City of Mt. Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998).  Even when the three Younger criteria are met, the court may refuse to abstain, especially in cases in which the plaintiff can demonstrate that the state court proceeding was the result of "bad faith, harassment," or "flagrant unconstitutionality."  Trainor v. Hernandez, 431 U.S. 434, 446-47 (1977).

> **1.** *The State Court Proceeding Does Not Involve An Important State Interest.*[3]

Fundamentally, Younger stands for the principle that "a federal district court may not, save in exceptional circumstances, enjoin, at the behest of a person who has

---

[3] Again, Hooters concedes the pendency of the State Court Complaint.

actually arguably violated a state statute, a state court proceeding to enforce the statute against that person." <u>Alleghany Corp. v. Haase</u>, 896 F.2d 1046, 1050 (7th Cir. 1990), <u>vacated on other grounds</u>, <u>Dillon v. Alleghany Corp.</u>, 499 U.S. 933 (1991).  While the Court has expanded <u>Younger</u> from its original application against state court criminal proceedings, this expansion is not limitless.  <u>New Orleans Pub. Serv., Inc. (NOPSI) v. Council of City of New Orleans</u>, 491 U.S. 350, 367-68 (1989).  Indeed, <u>Younger</u> abstention is not "always appropriate whenever a civil proceeding is pending in a state court." <u>Penzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 14, n. 12 (1987).

Rather, <u>Younger</u> applies when there is a strong, legitimate state interest in having the state court "perform [its] judicial functions." <u>NOPSI</u>, 491 U.S. at 368.  Indeed, a state court's ability to enforce its judgments, apply its appeal procedures or otherwise compel compliance with the state's judicial enforcement mechanism is the state interest that is at the heart of the <u>Younger</u> abstention doctrine.  <u>Id.</u>  see also <u>Penzoil</u>, <u>supra</u>; <u>Judice v. Vail</u>, 430 U.S. 327, 336 (1977).

Troy's state interest argument focuses not on the traditional interest protected by <u>Younger</u> (i.e., the state court's ability to enforce its judgments, orders and procedures) but rather it focuses on the claim that Troy has an interest in regulating liquor traffic. This argument is misdirected and not persuasive.  As the district court explained:

> In virtually any case in which a federal plaintiff is challenging the constitutionality of a state [action], there is a strong argument that an important state interest is implicated. After all, the state legislature and the governor have determined that the [action] was important enough to be enacted. However, the Supreme Court has noted that <u>Younger</u> abstention is not "always appropriate whenever a civil proceeding is pending in a state court." <u>Pennzoil</u>, 481 U.S. at 14 n. 12, 107 S.Ct. 1519. There must be something more than a state's interest in the constitutionality of its own [actions] for <u>Younger</u> to apply.
>
> The key question [of whether an important state interest is at stake] is designed to answer is whether the state proceeding "is the type of proceeding to which <u>Younger</u> applies." <u>NOPSI</u>, 491 U.S. at 367, 109 S.Ct. 2506.

Kendall-Jackson Winery, Ltd. v. Branson, 82 F. Supp.2d 844, 856 (N.D. Ill. 2000).

In Kendall Jackson Winery, the district court refused to apply Younger to bar a federal complaint seeking to enjoin the state liquor commission from entertaining proceedings to enforce portions of the liquor control act that plaintiffs claimed were unconstitutional.  Kendall Jackson Winery, 82 F. Supp. at 847.  Expressly noting the alleged important state interest in the sale and traffic of intoxicating liquors, the district court rejected the liquor control commission's request to apply Younger, concluding that "the plaintiffs' constitutional challenges do not implicate the state courts' ability to perform their judicial functions.  They do not 'involve challenges to the process by which the state compels compliance with the judgments of its courts.'"  Id. at 858 (quoting Penzoil, 481 U.S. at 13); see also Hughes v. Cristofane, 486 F. Supp. 541, 547 (D. Md. 1980) (refusing to apply Younger to federal action to enjoin statute prohibiting nudity, despite the fact that the parties were engaged in a related state court dispute over revocation of a liquor license).

Likewise, in this case, the facts do not support the application of Younger to bar this action.  Indeed, this action does not seek any injunction against or review of any state court proceeding.  It does not seek to interfere with the state judicial system's enforcement procedures.  It does not seek to bar the prosecution of plaintiff for violating any state law, or local ordinance on grounds of unconstitutionality.   Rather, this complaint seeks monetary relief for the violations of Hooters' constitutional rights consistent with Section 1983 – relief that is wholly independent of the enforcement of the state court's procedures.  Given that Troy cannot invoke the type of state interest protected by Younger, it cannot meet the requirements for the application of Younger abstention.  Consequently, this Court should deny Troy's motion.

2.      *Hooters Did Not Have Opportunity To Raise The Constitutional Claims In The Pending State Court Action*

As Hooters discussed in detail in Section IV-A of this brief, above, Hooters did not have the opportunity to state its constitutional claims in the pending state court action.[4]  Given that Hooters did not have the opportunity to raise the constitutional challenge in the pending state court action, Younger cannot apply and this Court may not abstain from resolving Hooters' claims against Troy.  Carroll, 139 F.3d at 1074; see also Kendall Jackson Winery, 82 F. Supp. 2d at 858-59.

        3.     *Assuming, Arguendo, That Younger Applies, The Younger Exception For Bad Faith, Harassment and Patent Unconstitutionality Prevents This Court from Abstaining.*

Younger is not a fixed and rigid doctrine.  Indeed, the Younger opinion itself left open the possibility of sustaining a federal action against a state proceeding in certain exceptional circumstances where state law is flagrantly and patently violative of express constitutional prohibitions; or where there is a showing of bad faith, harassment or other unusual circumstances.  Younger, 401 U.S. at 53-54.  The establishment of bad faith requires the plaintiff to demonstrate an absence of fair state proceedings. Judice, 430 U.S. at 338.  Typically, the plaintiff establishes bad faith and harassment by demonstrating that "the statute was enforced against [plaintiff] with no expectation of convictions but only to discourage exercise of protected rights." Cameron v. Johnson, 390 U.S. 611, 621 (1967).

The district court addressed a claim of bad faith in the factually similar case of Esmail v. Macrane, 862 F. Supp 217 (N.D. Ill. 1994); overruled on other grounds, 53 F.3d 176 (7th Cir. 1995).  In Esmail, the plaintiffs, liquor store operators, applied for a new liquor license and the renewal of an existing liquor license with the city.  Esmail, 862 F. Supp. at 220.  The city denied the plaintiffs' request.  Id.  Specifically, the city claimed that because one of the plaintiffs had previously been charged with selling alcohol to an

---

[4]      For brevity's sake, that argument is not reproduced here.  Instead, Hooters incorporates the argument from Section IV-A into Section IV-B-2.

underage person and because the plaintiffs omitted that detail from their application, it was denying both requests.  Id.  The plaintiffs appealed and the state court reversed the city's decision.  Id.  The city, in turn, appealed the state court's decision.  Id.

While the city's appeal was pending in the state appellate court, plaintiffs filed a complaint in federal court seeking relief under Section 1983 for violation of their constitutional rights.  Id.  In response to the federal complaint, the city moved to dismiss the claim on, *inter alia* the basis of Younger abstention.  Id.  In response, the plaintiffs asserted, that even if Younger applied, the bad faith exception to Younger would prevent the district court from abstaining.  Specifically, the plaintiffs alleged that the only reason the city denied their request was to seek retribution for the plaintiffs' favorable plea bargain on the previous charge of selling alcohol to an underage person.  Id. at 223. Further, the plaintiffs alleged that the city had previously intentionally ignored violations by other similarly situated applicants and that it had routinely overlooked those allegations and approved the requests.  Id.

The district court found that the plaintiffs' allegations were sufficient to invoke the bad faith exception of Younger.  Id.  Specifically, the district court held that "Plaintiffs' claim of bad faith is supported by specific allegations from which this Court may infer that Defendants knowingly instituted proceedings before the liquor control commissioner merely for the purpose of retaliating against the Plaintiffs."  Id.

The facts of this case are highly similar to the facts set forth in Esmail. Specifically, in this case, Hooters has alleged that Troy refused to recommend Hooters' application for transfer of its liquor license on the basis that it did not approve of the "image" that could possibly be inferred from the restaurant's name.  (Complaint at ¶¶ 23-25, 35, 46, 56).  Troy councilmember Cristina Broomfield illustrated Troy's bad faith, and its unabashed desire for retaliation, in the following statement from the hearing in which she voted against recommending the transfer:

I wasn't around ten (10) years ago when Hooter's [sic] moved into Troy and I cannot support this request by their own words they talk about we'll be moving out of a residential area into more of a commercial and you said that even this evening and it is the gateway of Troy and again it is not our place as a council to form moral judgments and extend them, I understand that and at the same time I wasn't around ten (10) years ago so I don't know what the discussion was in allowing the restaurant to come into the city.  Perhaps it was over on John R and not so visible, I don't know and I know that the entertainment is tempting [sic] to do it tastefully and all that but, ***Hooters is Hooters, any way you say it, and if you have to be able to get our approval for this liquor license to locate there, I can't support that, I won't support that.***  It's the gateway to our City, I just, you can dance around it, I hate to be so blatantly honest but, it is what it is, and I just can't do that, so I'll be voting No.

***

We as a council set the standards for what we want the city to present [sic] and look like and we have had, and I can't pull one out of the air right now, but we have had many different discussions on, do we want this office building, do we want it this high, do we want it that big, ya know, we go on and on and on about now [sic] we want our city to look.  I'm not trying to take cover where well you're just going to have to find another way because I'm going to go on record regardless. . . .  You may be the best business around that have been in your restaurant but when we choose if I'm associating with the Raiders, I'm a Raider fan [sic].  If I'm associated with this, that defines me.  And the businesses and things that come into Troy and they're already in Troy but to say that it's going to be the gateway, it's not about discrimination, ***it's about the imagine [sic] of Troy.  I don't know how [sic] any other way to say and they are in Troy and they're doing a business there, and they have a right to move anywhere they attempt to try but they are assuming [sic] a liquor license and they have to assume [sic] that license, they can't bring theirs that with you***, so they'll, I don't know they'll have to figure out another way ***but I'm not going to be part of it.***

(Ex. A at pp. 4, 6) (emphasis added).

Troy's motivations, as articulated by councilperson Broomfield, are clear: it intends to use the liquor license approval process as a vehicle for harassing Hooters in the hopes that Hooters will leave the city.  Troy regrets allowing Hooters into the city because it does not like Hooters' "image," so it will use the only means it has – the liquor license transfer approval - to hold Hooters hostage.  The district court in Esmail correctly found that such strong–arm tactics constitute bad faith and harassment and fall within

the <u>Younger</u> abstention exception.  Given the similarities between this case and <u>Esmail</u>, this Court should reach a similar conclusion and deny Troy's motion.

       4.      *Even If This Court Decided That* <u>Younger</u> *Applied, Staying The Matter, Not Dismissal, Is The Proper Remedy.*

      Although abstention motions, are typically reviewed pursuant to Rule 12(b)(1), <u>Gilbert</u>, 401 F.3d at 419, the specific relief afforded is not automatic dismissal.  Indeed, where only damages are sought, abstention principles "only permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 719 (emphasis in the original); <u>see id</u>. at 730 ("In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded; that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether." (quotation marks and citation omitted)); <u>see also</u> <u>Warmus v. Melahn</u>, 110 F.3d 566, 567 (8th Cir. 1997) ("[I]n actions at law ⋯ abstention principles permit federal courts only to enter an order that stays the adjudication pending completion of state proceedings, not one that dismisses the federal action altogether." (quotation marks omitted)); <u>cf</u>. <u>Jefferson County, Ala. v. Acker</u>, 527 U.S. 423, 435 n. 5, (1999) (dicta) ("[I]n a case seeking damages, rather than equitable relief, a federal court may not abstain, but can stay the action pending resolution of the state-law issue." (citing <u>Quackenbush</u>, 517 U.S. at 719-21)).

      Indeed, "[c]laims for damages are different" than claims for equitable relief, and where damages are sought, "a federal court may not decline to exercise jurisdiction over them unless the damages sought would require a declaration that a state statute is unconstitutional."  <u>Yamaha Motor Corp., U.S.A. v. Stroud</u>, 179 F.3d 598, 603 (8th Cir. 1999) (citing <u>Quackenbush</u>, 517 U.S. at 719, 730).  In this case, Hooters seeks only an

award of damages, not equitable relief.   (Complaint at Wherefore clauses).

Consequently, to the extent that this Court decides to abstain, it cannot dismiss the

matter, it may only stay the matter.  Quakenbush, supra.

      **C.**     **Hooters' Complaint States A Claim For Relief**.

          *1.*     *Hooters Has Adequately Plead A Claim For Relief For Violation Of Its First Amendment Right To Free Expression*

The First Amendment to the federal Constitution provides that "Congress shall

make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  The

protections of the First Amendment apply to actions taken not only by Congress, but by

any state or local legislative body, through operation of the Fourteenth Amendment.

Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983).

Troy argues that Hooters simply serves its customers food and drink and that is

not "speech" protected by the First Amendment.  Troy's argument, however, badly

misconstrues the claim stated by Hooters.  Indeed, Hooters' claim, as set forth in its

complaint, is that Troy has engaged in impermissible content-based speech restriction

by stating that it will not approve Hooters' application to transfer a liquor license because

Troy does not believe the name "Hooters" is consonant with Troy's self "image."  see

also (Complaint at ¶¶ 23-25); (Exhibit A at pp. 4, 6).

To be certain, commercial speech is protected by the First Amendment.  Virginia

State Bd. of Pharmacy v. Virginia Citizens Commercial Council, 425 U.S. 748 (1976).

Included in the guaranty of commercial free speech is the right to use trade names.

Sambo's Restaurants, Inc. v. City of Ann Arbor, 663 F.2d 686, 691-92 (6th Cir. 1981).  In

Sambo's Restaurants, the Sixth Circuit held that, following the Supreme Court's decision

in Virginia State Board of Pharmacy, a municipality no longer had the right to condition

building site plan approval on the selection of an "acceptable" trade name for the

business seeking the site plan approval.  Sambo's Restaurants, 663 F.2d at 691-92.

Thus, where, as here, a municipality denies a petition on the basis of the content of the applicant's trade name, the City has violated the applicant's rights under the First Amendment.  <u>Id.</u>  Consequently, the claim stated in the complaint does entitle Hooters to relief and Troy's motion must be denied.

>    2.    *<u>Hooters' Complaint States, With Requisite Specificity, Facts Supporting Its Claim That Troy Intentionally Treated It Differently Than Other Similarly Situated Plaintiffs.</u>*

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>In re Delorean Motor Co. v. Weitzman</u>, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting <u>Conley</u>, 355 U.S. at 47 (1957)). "The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts." <u>Mayer v. Mylod</u>, 988 F.2d 635, 638 (6th Cir. 1993) (citations omitted).  While some matters, such as fraud and mistake must be plead with strict factual particularity, the Federal Rules of Civil Procedure expressly provide that "[m]alice, *intent*, knowledge, and other condition of mind of a person *may be averred generally*."  Fed. R. Civ. P. 9(b) (emphasis added).

In its motion, Troy complains that Hooters did not specify the particular facts that support the claim that Troy intentionally treated Hooters differently than other liquor license transfer applicants.  (Dft.'s Br. at p. 19).  However, because this claim involves a matter of "intent," Hooters may plead the requisite element "generally."  Fed. R. Civ. P. 9(b).  Indeed, the allegations in the complaint – that Troy refused to grant Hooters' transfer request because it found Hooters' name and "image" offensive – will specifically and inferentially support the legal theory that Troy intentionally treated Hooters differently from all other liquor license transfer applicants.  Consequently, Hooters has

stated facts sufficient to support its claim for violation of its Fourteenth Amendment equal protection rights.  This Court must deny Troy's motion.

      3.      *Hooters' Complaint States A Claim For Violation Of The Substantive Due Process Clause.*

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law."  U.S. Const. amend. XIV § 1.  The Supreme Court explained that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Further, the Sixth Circuit explained that "[t]he right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action is commonly referred to as a 'substantive due process right.'"  Pearson v. City of Grand Blanc, 961 F.2d 1211, 1217 (6th Cir. 1992) (citing Curto v. City of Harper, 954 F.2d 1237, 1243 (6th Cir. 1992)).

Troy's only challenge to Hooters' due process claim is that Hooters does not have a property right protected by the Due Process Clause.  However, the cases cited by Troy in support of this position are wholly inapposite.  Specifically, in each of the cases cited by Troy in support of this motion, the liquor license applicants did not possess a liquor license at the time they applied for the transfer.   In this case, Hooters undisputedly has a valid Class C liquor license.

Most telling is the case of Wojick v City of Romulus, 257 F.3d 600 (2000), relied upon by Troy for the proposition that applicants for the transfer of liquor licenses are not afforded property rights.  (Dft.'s Br. at p. 20).  However, examination of the Wojick opinion reveals that it stands in direct contradiction to Troy's assertions.  In Wojick, the plaintiff had a *security interest* in an entertainment permit held by a third party.  Wojick, 257 F.3d at 603.  The plaintiff itself never held an entertainment permit.  Id.   When the

third party defaulted on its obligations to the plaintiff, the plaintiff foreclosed on its collateral and sought use of the permit.   Id.   However, the defendant city refused to approve the transfer of the entertainment permit from the third party to the plaintiff.   Id. The plaintiff filed suit alleging, *inter alia*, violation of its substantive due process rights. Id.

The Sixth Circuit addressed the issue of whether the security interest in the permit was sufficient to form a property interest protected by the Fourteenth Amendment.   Id. at 609-10.   The court began by observing the unquestioned maxim of Michigan law that "Michigan courts have held that the **holder** of **a** liquor license has a constitutionally protected interest."   Id. at 609 (citing Shamie v. City of Pontiac, 493 Supp. 679, 683 (E.D. Mich. 1977)).   However, because the Sixth Circuit determined that the plaintiff did not hold an entertainment permit, she did not have a property interest in the permit.[5]  Id. at 610.

The facts of the instant case are inapposite to the facts of Wojick.   In this case, Hooters has, and has continuously maintained for ten years, a Class C liquor license at the John R Restaurant.   (Complaint at ¶9).   Hooters' request to transfer the Wagon Wheel license to it is no different in substance and procedure than if Hooters had attempted to transfer its existing license from the John R Restaurant to the Rochester Road Restaurant.   Hooters is clearly not a first time applicant.   Moreover, Troy's claim that the property interest in a liquor license guarantees due process only with regard to renewals or revocations is not supported by the law.   The Sixth Circuit's mention of renewals or revocations was by way of example (i.e., the cases on which it relied just happened to involve renewals and revocations) and not limitation.   Wojick, 257 F.3d at

---

[5]       The Court specifically noted that, although the plaintiff once held the liquor license in issue, she never held the entertainment permit.  Indeed, the entertainment permit was granted to the third party and, as it regarded the entertainment permit, the plaintiff had no right other than the contingent security interest.

610.  In fact, Troy provides no case law indicating that once a person establishes a property interest protected by the Fourteenth Amendment, that protection applies to some state action, but not other state action.  Given that the facts of <u>Wojick</u> are inapposite to the facts of the instant case, <u>Wojick</u>'s reasoning does not apply.  Consequently, as "the holder of a liquor license" Hooters has a property interest in the transfer of the license and can maintain its action for violation of its Fourteenth Amendment rights.

## V.  CONCLUSION

For the reasons stated above, plaintiff respectfully requests that this Honorable Court (1) dismiss Defendant's motion with prejudice; (2) require Defendant to file an answer to Plaintiff's complaint within ten days; and (3) award any other relief that this Court deems appropriate, just and equitable.


Dated:  December 13, 2006                          Respectfully submitted,


/s/ Edward G. Lennon                              /s/ Stephen T. McKenney
EDWARD G. LENNON, PLLC                            HYMAN LIPPITT, P.C.
Edward G. Lennon (P42278)                         Stephen T. McKenney (P65673)
Counsel for Petitioner-Appellant                  Co-Counsel for Petitioner-Appellant
322 N. Old Woodward Ave.                           322 N. Old Woodward Ave.
Birmingham, MI  48009                             Birmingham, MI 48009
(248) 723-6270                                    (248) 646-8292
elennon@lennonlawpllc.com                          smckenney@hymanlippitt.com

### PROOF OF SERVICE

I hereby certify that on the 13th day of December, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Signature:  s/  Teresa A. mbrunone
                    Assistant to Stephen T. McKenney
                    322 N. Old Woodward
                    Birmingham, MI  48009
                    (248) 646-2829
                    timbrunone@hymanlippitt.com